GARETT NICHOLAS GRIMES a/k/a Steven Capilango
v. STATE OF MARYLAND

[No. 557, September Term, 1979.]

*Decided January 11, 1980.*

The cause was submitted on briefs to GILBERT, C. J., and MOYLAN and WILNER, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Martha Weisheit, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Valerie A. Leonhart, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Mark Binstock, Assistant State's Attorney for Montgomery County,* for appellee.

WILNER, J., delivered the opinion of the Court.

While on patrol late in the evening of May 22, 1978, police officer John Becraft observed two young males exiting a barber shop in the Wildwood Manor Shopping Center. Suspecting that their business at that hour of the evening was non-tonsorial in nature, he directed them to halt; and, when they declined to do so, he pursued them onto the parking lot. The lads were too swift for Officer Becraft, who soon gave up the chase. He broadcast a "lookout" for the two and requested the assistance of the canine corps. He described the suspects as white males, 16-20 years of age, one dressed in blue jeans and a blue jean jacket, the other wearing dark, possibly dark green clothing.

About 10 minutes later, Officer Garner Smith arrived with a police dog. This noble beast tracked the suspects into a nearby residential area, but then lost the scent. The scent did not remain lost for very long, however. Mrs. Evelyn Jerome's dog picked it up and started barking. This led Mrs. Jerome to look outside, observe a young man wearing a dungaree jacket standing by a tree just outside her window, and call the police. Officer Smith, and his dog, responded to the call. Mrs. Jerome directed them to her back yard, where the police dog located appellant hiding under some shrubbery.

Appellant came out willingly. Officer Smith asked his name, to which he responded "Steven Capilango." This, it turns out, was *not* appellant's name. A flashlight, screwdriver, and pair of wire grips were found in his hip pocket.

Officer Hosinski also responded to Mrs. Jerome's call. He handcuffed appellant, escorted him to the police car, and began to advise him of his *Miranda* rights when appellant stated, "You can't charge me with burglary... I was standing in the hallway just acting as a lookout. I didn't go into the store."

Appellant was charged with storehouse breaking with intent to commit a felony (Md. Ann. Code art. 27, § 32) and with the attempt to commit that crime. Following a ruling on his pretrial motion to suppress the various statements he made to the police, he was tried on these charges before a jury in the Circuit Court for Montgomery County. At the

conclusion of the case, and over appellant's objection, the court instructed the jury that the charge of storehouse breaking with intent to commit a felony included within it, as a lesser included offense, the crime of storehouse breaking with intent to steal goods worth less than $100. Thus, the court said, although that lesser crime, a misdemeanor, was not specifically charged, the jury could convict of that if it found that appellant's intent was to steal goods worth less than $100. The jury so found, appellant was so convicted, and we are asked to determine whether this was proper. We are also asked to determine whether appellant's untruthful answer to Officer Smith's request for his name was admissible.

We shall answer both questions in the affirmative.

### (1) *"Lesser Included Offense"*

As noted, appellant was charged under art. 27, § 32, with "breaking a storehouse ... with an intent to commit murder or felony therein, or with the intent to steal, take or carry away the personal goods of another *of the value of one hundred dollars ($100.00) or more* therefrom. . . ." (Emphasis supplied.) This is a felony and subjected the perpetrator to 10 years in prison. Appellant's conviction, however, pursuant to the court's instructions, was not under § 32, but under § 342. That section made it a misdemeanor, subject to 18 months imprisonment, for a person to break into a storehouse "with intent to steal any money, goods or chattels *under the value of one hundred dollars. . . ."* (Emphasis supplied.) [1] His complaint is that he was convicted of a crime with which he was not charged. The State argues that this is permissible because, as the trial court concluded, the § 342 misdemeanor is a lesser included offense and is therefore subsumed in the § 32 felony.

The concept of inclusive and included offenses is one aspect or emanation of the more general doctrine of merger. As with the underlying doctrine, it becomes operative when a criminal

---

1. By Laws of Md., 1979, ch. 687, § 32 was amended (and § 342 was rewritten) to make $300, rather than $100, the dividing line between the felony and the misdemeanor. That change does not affect this case, however.

defendant faces prosecution, reprosecution, or punishment for two or more separate offenses as the result of the same incident or conduct. The most common effect of a merger, mandated first by common law and then by application of the double jeopardy clause of the Fifth Amendment, is to preclude a multiple conviction and sentence. The lesser "included" offense merges into the greater "inclusive" offense, and judgment may be entered only upon the greater.

There is another, almost reverse, product of this doctrine, however, that proceeds with equal logic. The very element of inclusiveness — the theory that the greater offense necessarily incorporates within it the lesser offense — also means that a conviction of the greater presupposes a finding of guilt on the lesser included offense as well. In algebraic terms, if A is the sum of B and C, the establishment of A of necessity also establishes both B and C. This applies not only to a conviction, but also to a charge. An allegation of A is deemed to include an allegation of B and C, its constituent parts. Thus, upon that rationale, courts have rather consistently held that a charging document is effective to charge and, upon proper proof to permit conviction of, not only the particular offense specifically alleged but, in addition, all lesser offenses necessarily included within it, whether or not they are themselves separately stated. *See* in general 42 C.J.S. *Indictments and Informations,* §§ 271, 272. We concluded directly in *Johnson v. State,* 38 Md. App. 100, 109 (1977): "The clear weight of authority is that conviction of a necessarily included lesser offense is permissible under a document charging a greater offense. . . ." *Compare,* however, *Bennett v. State,* 229 Md. 208, 217 (1962); *Davis v. State,* 39 Md. 355 (1874).

The theory underlying this secondary product of merger is not that it is permissible to convict a person of a crime that has not been charged, but rather that the greater charge includes the lesser. Thus, when a defendant stands trial on the greater, inclusive, charge, he in fact and in law stands trial at the same time on all of the lesser, included, charges as well. *See Burnett v. State,* 122 N.E.2d 468 (Ind. 1954).

The question initially before us, then, is whether the § 342

misdemeanor is a lesser offense included within the § 32 felony. It is not.

In *Green v. State,* 243 Md. 75, 80 (1966), the Court of Appeals commented that "[m]ost jurisdictions, including Maryland, have abolished the common law doctrine of merger and the true test under the modern concept of merger of offenses *is whether one crime necessarily involves the other."* (Emphasis supplied.) In applying that test to determine whether one offense is included within another, this Court has added an explanatory supplement. In *Pinkett v. State,* 30 Md. App. 458, 472 (1976), for example, we said: "The test under the modern doctrine of merger is whether one crime necessarily involves the other, *that is, when the facts necessary to prove the lesser offense are essential ingredients in establishing the greater offense, the lesser offense is merged into the greater offense."* (Emphasis supplied.) *See also Moore v. State,* 23 Md. App. 540, 548 (1974), *cert. den.* 274 Md. 730 (1975); *Stewart v. State,* 4 Md. App. 565, 569 (1968). *Compare Tender v. State,* 2 Md. App. 692, 699 (1968), *cert. den.* 250 Md. 732 (1968), 393 U.S. 1096 (1969), merely reciting the test as stated in *Green. Compare Washington v. United States,* 366 A.2d 457, 461 (D.C. 1976): "A lesser offense must be such that the greater offense cannot be committed without also committing the lesser."

In *Wersten v. State,* 232 Md. 164, 165 (1963), the Court of Appeals viewed the two offenses now before us as "complementary and mutually exclusive." One requires an intent to steal goods worth $100 or more; the other requires an opposite intent, to steal goods worth less than $100. As the Court necessarily observed, a person cannot have both intents at the same time — that is what makes the offenses "mutually exclusive" — and thus a person cannot be convicted of both crimes as the result of the same storehouse breaking. *See Wersten,* 232 Md. at 166.

When we compare this *exclusivity* with the test used to determine *inclusivity,* it becomes immediately apparent that what the Court of Appeals has said is *ex*clusive cannot at the same time be *in*clusive. To prove the lesser offense, the State must prove an intent to steal less than $100; but once it does

that, it has precluded a conviction under § 32. To that extent, the facts necessary to prove the lesser offense are *not* essential ingredients in establishing the greater offense but, as shown, actually prevent establishment of the greater offense.

This does not mean, however, that appellant's conviction under § 342 was improper, or that the court's instructions, though technically erroneous, were prejudicially so. There is a relationship between the two statutes, but it is not one of inclusiveness.

We traced the history of these two provisions in *Prevatte v. State,* 40 Md. App. 623 (1978). We there pointed out that the original storehouse breaking offense, as enacted by the General Assembly in 1809, made no distinction between an intent to commit grand or petit larceny. Both were then felonies, and what the statute prohibited was storehouse breaking with intent to commit a felony. Only when, in 1933, the Legislature made petit larceny a misdemeanor did it become necessary, in order to maintain the existing ambit of the storehouse breaking offense, to divide it into two sub-offenses — one where the intent was to commit a felony (including, of course, grand larceny) and the other where the intent was to commit only petit larceny, now a misdemeanor.

From this history, and from a simple analysis of the two statutes, it seems clear that they involve not different offenses but the same offense in different degrees. That is why a charge under § 32 carries with it a charge under § 342. It is precisely the same crime. Where the object of the intrusion is larceny, the offense, in either case, is storehouse breaking with intent to steal personal property. The distinction as to whether the intended larceny is grand or petit has meaning only as to whether the perpetrator is a felon or a misdemeanant and as to possible punishment.

Although occasionally stated, erroneously we think, in the context of inclusive and included offenses, the same result is uniformly reached in the analogous situation of charging grand larceny and convicting of petit larceny, crimes that are equally inconsistent. Such convictions of offenses not *specifically* charged are regularly sustained. *See People v.*

*Wilder,* 198 P. 841 (Cal. App. 1921); *Commander v. State,* 178 So. 241 (Ala. 1938); *Burnett v. State,* 122 N.E.2d 468 (Ind. 1954); *Corlew v. State,* 180 S.W.2d 900 (Tenn. 1944); *State v. King,* 275 S.W.2d 310 (Mo. 1955); *Morrow v. State,* 185 So. 2d 200 (Fla.App. 1966); *Scoggins v. State,* 528 S.W.2d 641 (Ark. 1975); *State v. Schrager,* 442 P.2d 1004 (Wash. 1968); *Cabbler v. Commonwealth,* 184 S.E.2d 781 (Va. 1971); *State v. Lawrence,* 234 P.2d 600 (Utah 1951); *Johnson v. State,* 135 So. 592 (Ala. 1931); *State v. Summers,* 139 S.E.2d 627 (N.C. 1965). *See also State v. Cooper,* 124 S.E.2d 91 (N.C. 1962).

The court's instructions in this case clearly advised the jury of the nature of the "two" offenses, the requisite elements of each, and the differences between them. For the reasons explained above, we find no error. Appellant was indeed charged with the crime of which he was convicted.

### (2) *Alias Steven Capilango*

Appellant's second contention is based upon *Miranda v. Arizona,* 384 U.S. 436 (1966). He claims that when Officer Smith asked his name, he was already in police custody, that the request therefore was in the nature of a custodial interrogation, that he had not yet been advised of his various *Miranda* rights, and that evidence of his reply was therefore inadmissible. We find no merit to this argument. *See Clarke v. State,* 3 Md. App. 447, *cert. den.* 251 Md. 748 (1968); *Probst, May & May v. State,* 5 Md. App. 36 (1968), *cert. den.* 252 Md. 731 (1969); *State v. Landrum,* 544 P.2d 664 (Ariz. 1976). Until the Court of Appeals directs us otherwise, we shall adhere to the view that routine questions seeking a person's name and address are not proscribed by *Miranda,* and if the person answers such questions, his answers are not rendered inadmissible by the exclusionary rule announced in *Miranda.*[2]

*Judgment affirmed; appellant to pay the costs.*

---

2. The Court of Appeals in *Mills v. State,* 278 Md. 262, 275 (1976), discussed at some length but then found it unnecessary to decide whether police questioning designed to elicit "routine information," such as name and

---

address is within the *Miranda* doctrine. It noted the disagreement, especially in the federal appellate courts, on this issue. *See Farley v. United States,* 381 F.2d 357 (5th Cir.), *cert. den.* 389 U.S. 942 (1967); *United States v. La Monica,* 472 F.2d 580 (9th Cir. 1972); *United States Ex. Rel. Hines v. La Vallee,* 521 F.2d 1109 (2d Cir. 1975), *cert. den.* 423 U.S. 1090 (1976); *United States v. Prewitt,* 553 F.2d 1082 (7th Cir.), *cert. den.* 434 U.S. 840 (1977) (all holding *Miranda* inapplicable to "routine" questions); *contra, Proctor v. United States,* 404 F.2d 819 (D.C. Cir. 1968); *see also United States v. Grant,* 549 F.2d 942 (4th Cir.), *cert. den.* 432 U.S. 908 (1977).