985 A.2d 1204

**Richard C. SMITH**

v.

**STATE of Maryland.**

**No. 1 Sept.Term, 2009.**

Court of Appeals of Maryland.

Dec. 30, 2009.

Kellie M. Black, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore, MD), on brief for Respondent.

Brenda Gruss, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., of Maryland, Baltimore, MD), on brief for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

GREENE, Judge.

In a bench trial, held in the Circuit Court for Montgomery County, Richard C. Smith, the petitioner, was convicted of robbery with a dangerous weapon and use of a handgun in the commission of a felony but acquitted of several other charges, including first-degree assault. The Court of Special Appeals, in an unreported opinion, reversed the two convictions because it concluded that they were inconsistent with the acquittal for first-degree assault. The intermediate appellate court then remanded the case to the trial court with directions to enter a judgment of guilty against the petitioner for the crime of misdemeanor theft, an offense that was neither explicitly charged nor pursued at trial.

We have been asked to determine whether this remand was in error and whether a conviction for misdemeanor theft would be inconsistent with the acquittal for first-degree assault. In regard to the first issue, we shall hold that the remand was in error for two reasons: (1) the conviction for the greater offense of robbery with a dangerous weapon was reversed for inconsistency and therefore could no longer provide the basis for a conviction for the lesser offense of misdemeanor theft, and (2) neither the State nor the petitioner was given an opportunity to present an argument regarding misdemeanor theft at trial. We need not address the second issue because, consistent with our resolution of the first issue, the offense of misdemeanor theft was not properly before the Court of Special Appeals and is not properly before this Court. We

shall accordingly reverse the judgment of the Court of Special Appeals with regard to the remand.

## I.

### *Procedural Background*

This case originated in the Circuit Court for Montgomery County. Petitioner Richard C. Smith, under indictment, was charged with two counts of robbery with a dangerous weapon,[1] two counts of use of a handgun in the commission of a felony,[2] two counts of first-degree assault,[3]

---

1. Robbery with a dangerous weapon, as charged against Smith, occurs when a person "commit[s] or attempt[s] to commit robbery under § 3–402 of this subtitle ... with a dangerous weapon...." Md.Code (1957, 2009 Supp.), § 3–403(a) of the Criminal Law Article. Robbery with a dangerous weapon is a felony. § 3–403(b) of the Criminal Law Article.

 Robbery is a common law crime in Maryland and is defined as "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear." *Coles v. State*, 374 Md. 114, 123, 821 A.2d 389, 394 (2003) (quoting *Darby v. State*, 3 Md.App. 407, 413, 239 A.2d 584, 588 (1968)); *see also* § 3–402 of the Criminal Law Article (prohibiting robbery). By statute, robbery also
 requires proof of intent to withhold property of another:
 (i) permanently;
 (ii) for a period that results in the appropriation of a part of the property's value;
 (iii) with the purpose to restore it only on payment of a reward or other compensation; or
 (iv) to dispose of the property or use or deal with the property in a manner that makes it unlikely that the owner will recover it.
 § 3–401(c) of the Criminal Law Article.

2. Use of a handgun in the commission of a felony, as charged against Smith, occurs when a person uses "any handgun in the commission of ... any felony...." § 4–204(a) of the Criminal Law Article. Use of a handgun in the commission of a felony is a misdemeanor. § 4–204(b) of the Criminal Law Article.

3. Assault in the first degree, as charged against Smith, occurs when a person "commit[s] an assault with a firearm, including ... a handgun...." § 3–202(a)(2) of the Criminal Law Article. Assault in the first degree is a felony. § 3–202(b) of the Criminal Law Article. In Maryland, assault can be either "(1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery." *Edmund v. State*, 398 Md. 562, 571, 921 A.2d 264,

and two counts of conspiracy to commit robbery with a dangerous weapon. In a bench trial, the trial judge convicted Smith of one count of robbery with a dangerous weapon and one count of use of a handgun in the commission of a felony, but acquitted Smith of the other charges, including both counts of first-degree assault.

Smith appealed his convictions to the Court of Special Appeals, arguing that, among other things, the trial court issued impermissibly inconsistent verdicts when it convicted Smith of robbery with a dangerous weapon and use of a handgun in the commission of a felony and acquitted him of first-degree assault. The intermediate appellate court, in an unreported opinion, agreed with Smith that the convictions were inconsistent, concluding that first-degree assault is a lesser included offense of both robbery with a dangerous weapon and use of a handgun in the commission of a felony. The Court of Special Appeals also agreed that the inconsistency was impermissible because the trial court had not explained the inconsistent verdicts, as required by our decision in *State v. Williams*, 397 Md. 172, 190, 916 A.2d 294, 305 (2007). Accordingly, the Court of Special Appeals reversed the trial court's judgment. In addition, the intermediate appellate court remanded the case to the trial court with directions to enter a guilty verdict against Smith for misdemeanor theft, an offense the State neither explicitly charged nor pursued at trial.[4]

---

269 (2007) (quoting *Ford v. State*, 330 Md. 682, 699, 625 A.2d 984, 992 (1993)). Battery is "any unlawful force used against the person of another, no matter how slight." *Id.* (quoting *State v. Duckett*, 306 Md. 503, 510, 510 A.2d 253, 257 (1986)).

4. The Court of Special Appeals directed the trial court to enter a guilty verdict for misdemeanor theft under § 7–104(a) of the Criminal Law Article. Under that provision, misdemeanor theft occurs when a person

willfully or knowingly obtain[s] or exert[s] unauthorized control over property, if the person: (1) intends to deprive the owner of the property; (2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or (3) uses, conceals, or abandons the property knowing the use, conceal-

Smith petitioned this Court for a writ of certiorari, asking us to decide the following questions:

1. Did the Court of Special Appeals err in directing the trial court to enter a guilty verdict on misdemeanor theft, where the State did not pursue such a conviction at trial?

2. Is the misdemeanor theft conviction ordered by the Court of Special Appeals impermissibly inconsistent with the trial court's acquittal on the first degree assault charge? [5]

We granted certiorari as to both questions. We answer the first question in the affirmative and need not answer the second question because of our resolution of the first question.

### *Facts of the Case*

This case involves two incidents that occurred after midnight on September 9, 2006, in Silver Spring. In the first incident, Ruben Levell was walking near his apartment when a man approached him, pointed a gun at Levell's face, demanded Levell's cell phone, and searched Levell's pockets and removed Levell's keys. A second man joined the gunman and asked what the gunman had gotten from Levell. When the gunman informed the second man that he had gotten nothing, one of the men dropped Levell's keys and told him to run. Levell told the men that he needed his keys to get into his apartment, and one of the men told him to pick them up. Levell did so and ran home. Levell later identified Smith as the second man, although he acknowledged that he could not be sure.

---

ment, or abandonment probably will deprive the owner of the property.
§ 7–104(a) of the Criminal Law Article. Theft is a misdemeanor if the property at issue has a value of less than $1,000. § 7–104(g)(2) of the Criminal Law Article.

5. We have not been asked to decide whether the Court of Special Appeals correctly concluded that the trial court issued inconsistent judgments. Neither the State nor the petitioner has requested a review of that decision.

In the second incident, Joseph Durbin was jogging when he was approached by a man who pointed a gun at his head and asked if Durbin had any money. Durbin did not, so the gunman asked if Durbin had anything else. Durbin gave the gunman his MP3 player. The gunman then patted down Durbin, asked him again if he had any money, and turned out Durbin's pockets. A second man approached and told Durbin to run away, after which the gunman asked Durbin if he wanted his house key, which had dropped from Durbin's turned-out pocket. Durbin took the key, ran to a nearby house, and called the police. Later that night, police officers drove Durbin to a location where the police had two men under arrest, and Durbin identified them as the men from the incident. At trial, Durbin said that it was possible that Smith was one of the men from the incident, but that he could not be sure.

Smith and another man, Christopher Bailey, were arrested later on the night of the two incidents. Detective Sheila Sugrue of the Montgomery County Police saw Smith and another man standing on a street corner and saw that they matched the description she had received of two men who had committed an armed robbery. When Detective Sugrue exited her car and identified herself as a police officer, Smith stopped and spoke with her while the other man, later identified as Bailey, ran away. Smith told Detective Sugrue that he had watched a movie at a nearby theater and was waiting for a bus, although no movies were playing at the theater that late at night and Detective Sugrue had seen Smith fail to get on a bus that had arrived and departed while Smith waited. Bailey was apprehended later.

Smith and Bailey were arrested. Smith was charged with eight counts: robbery with a dangerous weapon of Levell (count 1); use of a handgun in the commission of a felony, with respect to Levell (count 2); first degree assault of Levell (count 3); conspiracy to commit the armed robbery of Levell (count 4); robbery with a dangerous weapon of Durbin (count 5); use of a handgun in the commission of a felony, relating to Durbin (count 6); first-degree assault of Durbin (count 7);

and conspiracy to commit robbery with a dangerous weapon of Durbin (count 8).

The case proceeded to trial in the Circuit Court for Montgomery County. At the close of the State's case, Smith moved for a judgment of acquittal on all counts. He argued that the evidence was insufficient to identify him as the second man in either incident and that, even if he were the second man, the evidence was insufficient to show that he had aided and abetted the gunman. The trial court granted the motion with respect to counts one, two, and three, and denied the motion with respect to the other counts. At the close of all evidence, Smith renewed his motion for a judgment of acquittal, which the trial court granted with respect to counts four and eight, as well as count seven for first-degree assault. The trial court ultimately convicted Smith of robbery with a dangerous weapon and use of a handgun in the commission of a felony, as those charges related to Durbin.

On appeal, as explained above, the Court of Special Appeals reversed both convictions because it concluded they were inconsistent with the acquittal for first-degree assault. The intermediate appellate court then remanded the case to the trial court with instructions to enter a verdict of guilty against Smith for misdemeanor theft. We granted Smith's petition for a writ of certiorari. *Smith v. State,* 407 Md. 276, 964 A.2d 675 (2009).

## II.

We first address whether the Court of Special Appeals erred in remanding the case to the trial court with directions to enter a verdict of guilty for misdemeanor theft even though that offense was never charged or pursued at trial. We shall hold that such a remand was impermissible for two reasons. First, the Court of Special Appeals reversed the conviction for robbery with a dangerous weapon due to inconsistency. This conviction, now reversed, could no longer provide the basis for a conviction for the lesser included offense of misdemeanor theft. Second, neither Smith nor the State had an opportunity

to present arguments regarding misdemeanor theft in the trial court. The parties must be given that opportunity before a defendant may be convicted of an uncharged lesser included offense.

## *Parties' Contentions*

Smith presents several arguments why he believes that the intermediate appellate court erred. He first refutes the Court of Special Appeals' reliance on *Hagans v. State*, 316 Md. 429, 559 A.2d 792 (1989), in directing the trial court to convict him of the uncharged lesser included offense of misdemeanor theft. Smith admits that, consistent with *Hagans*, a jury may convict a defendant of a lesser included offense even though that offense was not explicitly charged. Smith argues, however, that *Hagans* also includes a number of exceptions to this rule, one of which he considers relevant: an uncharged lesser included offense may only be submitted to a jury if one of the parties has requested or agreed to the submission. Neither party made such a request or agreement in this case. Smith argues that, absent such a request, the trial judge, acting as fact-finder, could not have found Smith guilty of misdemeanor theft and an appellate court cannot now remand his case with instructions for the trial court to do so.

Smith also refutes the Court of Special Appeals' reliance on *Brooks v. State*, 314 Md. 585, 552 A.2d 872 (1989). Smith acknowledges that, in *Brooks*, this Court reversed a conviction but directed the trial court to enter a verdict of guilty for a lesser included offense because "[w]hen the jury convicted Brooks of [the greater offense], it necessarily convicted him of [the lesser included offense] as well." 314 Md. at 601, 552 A.2d at 880. Nonetheless, he argues that *Brooks* implicitly supports his position. Unlike the present case, Smith asserts, the defendant in *Brooks* was explicitly charged with the lesser included offense. Also unlike the present case, the lesser included offense in *Brooks* was submitted to the jury, in its role as the finder of fact. Smith considers these differences between *Brooks* and the present case to be significant.

Smith next discusses cases in which other appellate courts have reversed a conviction and directed the trial court to convict a defendant of an uncharged lesser included offense. He cites several courts that have determined that such a remand is appropriate. *See Shields v. State,* 722 So.2d 584, 587 (Miss.1998) (finding the evidence insufficient and directing the lower court to convict on a lesser included offense that was not before the jury); *United States v. Hunt,* 129 F.3d 739, 746 (5th Cir.1997) (same); *United States v. Smith,* 13 F.3d 380, 383 (10th Cir.1993) (same). Smith distinguishes these cases from the present case because each court applied the four-part test from *Allison v. United States,* 409 F.2d 445, 451 (D.C.Cir. 1969),[6] and determined that a conviction for the lesser included offense would not be unduly prejudicial to the defendant.

Smith then cites cases where other courts have reached a different conclusion, holding that such a remand is only appropriate if the lesser included offense was submitted to the jury. For example, Smith notes that the Supreme Court of New Mexico has stated that directing a trial court to enter a judgment of conviction against a defendant for "an offense not presented to the jury would deprive the defendant of notice and an opportunity to defend against that charge" and would create "the problem of convicting [the d]efendant on appeal of a charge he did not in fact defend at trial." *State v. Villa,* 136 N.M. 367, 98 P.3d 1017, 1018, 1021 (2004); *see also State v. Brown,* 360 S.C. 581, 602 S.E.2d 392, 399–401 (2004) (identifying notice concerns, among others, when refusing to direct a trial court to convict for a lesser included offense). Smith argues that he, like the defendant in *Villa,* was deprived of

---

6. In *Allison v. United States,* the United States Court of Appeals for the District of Columbia Circuit held that an appellate court may modify a conviction to a lesser included offense, but that

[i]t must be clear (1) that the evidence adduced at trial fails to support one or more elements of the crime of which appellant was convicted, (2) that such evidence sufficiently sustains all the elements of another offense, (3) that the latter is a lesser included offense of the former, and (4) that no undue prejudice will result to the accused. 133 U.S.App.D.C. 159, 409 F.2d 445, 451 (1969) (citing *Austin v. United States,* 382 F.2d 129 (1967)).

any opportunity at trial to defend himself against a conviction for misdemeanor theft. Smith also notes that the Supreme Court of Wisconsin has stated that a conviction reversed for insufficient evidence is "not sufficiently reliable to be recast as a jury finding of guilty on the elements of a lesser included offense," *State v. Myers*, 158 Wis.2d 356, 461 N.W.2d 777, 782 (1990), and he argues that his reversed conviction is similarly unreliable. Finally, he cites cases where courts have refused to direct a trial court to convict a defendant of a lesser included offense that was not submitted to the jury because the decision whether to submit a lesser included offense to a jury is a matter of trial strategy that should be left to the parties. *Myers*, 461 N.W.2d at 782–83; *Villa*, 98 P.3d at 1021. Smith argues that the reliability, notice, and trial strategy issues discussed in these cases are implicated in the present case, although he admits that each of these cases involved a jury verdict that was reversed for insufficient evidence.

Smith concludes with a preservation argument. He contends that the Court of Special Appeals should not have considered the offense of misdemeanor theft because the State failed to preserve its argument that this offense should be considered on appeal. Citing *Walker v. State*, 338 Md. 253, 262, 658 A.2d 239, 243 (1995), and Maryland Rule 8–131(a), Smith asserts that appellate courts will ordinarily refuse to consider issues that were not raised below. If the State wished to pursue a conviction for misdemeanor theft, Smith concludes, it should have done so in the trial court.

In response, the State focuses primarily on its contention that Smith's arguments are irrelevant to bench trials. According to the State, the holding from *Hagans*—that a trial judge cannot submit an uncharged lesser included offense to the jury absent a request or agreement from one of the parties—is inapplicable when the case is before a judge. The State argues that this holding from *Hagans* was based on our conclusion that the decision whether to submit an uncharged lesser included offense to the jury is a matter of trial strategy best left to the parties. Unlike a jury trial, where the parties might choose not to submit an uncharged lesser included

offense to the fact-finder in hopes of receiving a favorable compromise verdict, the State asserts that a bench trial presents no such strategic decision because a judge cannot compromise with him or herself. Absent this strategic concern, the State contends that a trial judge should always be allowed to convict a defendant of an uncharged lesser included offense. Finally, the State concludes that if a trial judge can convict a defendant of an uncharged lesser included offense without a request or agreement from one of the parties, an appellate judge can direct the trial judge to do so.

The State also specifically addresses Smith's arguments about reliability, notice, and preservation. Again, the State's responses rely mainly on its contention that bench trials are different than jury trials. Regarding reliability, the State argues that an unreliable verdict is unlikely to result when an appellate court remands a case with directions to convict the defendant of an uncharged lesser included offense. This is so, the State asserts, because a judge, unlike a jury, should only convict a defendant of a greater offense if he or she also finds sufficient evidence to convict on the lesser included offense. The State argues that notice is a non-issue as well because the defendant should always be aware that the State might request consideration of a lesser included offense and because the defendant is not faced with the strategic concerns that might arise if the State could pursue a compromise verdict.[7] The State then argues that Smith's preservation arguments actually concern trial strategy, but that there is no relevant strategic concern in a bench trial because the parties cannot forgo the pursuit of a lesser included offense in hopes of achieving a favorable compromise verdict because, again, a judge cannot issue a compromise verdict.

---

7. The State also argues that it cannot see how Smith's defense would have changed if he had known that the State might pursue a conviction for misdemeanor theft. We express no opinion on what Smith's defense may or may not have been under different circumstances at trial, but Smith would have had an opportunity to explain his alternate defenses, if there were any, if he had been given an opportunity to do so before the trial court.

The State presents two final arguments why a remand like the one in this case is appropriate. First, the State argues that there is no preservation issue because the State must necessarily make all the evidentiary and sufficiency arguments pertaining to the lesser included offenses to succeed in convicting a defendant on a greater offense. This is so, the State contends, because the State can only achieve a conviction on the charged greater offenses if it also proves each element of the lesser included offenses. Second, the State argues that the remand in this case appropriately balances the defendant's due process rights and the public's interest in respecting the fact-finder's verdict.

### Effect of the Reversal for Inconsistency

■ The first error in the Court of Special Appeals' remand concerns its reliance on a conviction that it reversed for inconsistency. The intermediate appellate court reversed Smith's conviction for robbery with a dangerous weapon because it was inconsistent with his acquittal for first-degree assault. That reversed conviction, however, provided the only basis for directing the trial court to enter a judgment of guilty against Smith for misdemeanor theft. We hold that an appellate court may not rely on a conviction that has been reversed for inconsistency as the basis for directing a trial court to enter a judgment of guilty for a lesser included offense.

■ This Court has addressed inconsistent verdicts several times in recent years. Until 2008, we joined most jurisdictions in following the "normal" rule that inconsistent verdicts were generally acceptable. *Price v. State*, 405 Md. 10, 19, 949 A.2d 619, 624 (2008). By 2008, however, we had also identified a wide variety of exceptions to that rule. For example, seemingly inconsistent verdicts by a trial judge in a non-jury trial were, and still are, only acceptable if the trial judge explains the apparent inconsistency on the record. *Williams*, 397 Md. at 189–90, 916 A.2d at 305; *Johnson v. State*, 238 Md. 528, 544–45, 209 A.2d 765, 772 (1965). Inconsistent verdicts were unacceptable in criminal trials when the judge rendered guilty verdicts that were inconsistent with non-guilty verdicts ren-

dered by the jury. *Galloway v. State,* 371 Md. 379, 401, 809 A.2d 653, 667 (2002). Inconsistent jury verdicts of guilty were also invalid. *Shell v. State,* 307 Md. 46, 55, 512 A.2d 358, 362 (1986). In 2003, we held that inconsistent jury verdicts were unacceptable in all civil cases. *Southern Management v. Taha,* 378 Md. 461, 487–88, 836 A.2d 627, 630 (2003). We also recognized that inconsistent verdicts were contrary to law and gave trial courts the discretion to reject them. *Price,* 405 Md. at 21, 24, 949 A.2d at 626, 627.

In *Price,* we reevaluated our approach to inconsistent verdicts and, because of these many exceptions, rejected the common law "normal" rule. Instead, we held that no inconsistent jury verdicts would be tolerated.[8] *Price,* 405 Md. at 29, 949 A.2d at 630. In reaching this conclusion, we noted that the traditional justifications for tolerating inconsistent jury verdicts would be as applicable to civil cases as criminal cases, but that we had chosen to reject inconsistent verdicts in civil jury trials but not in criminal jury trials. *Price,* 405 Md. at 23–24, 949 A.2d at 627. Similarly, we noted that because criminal defendants receive greater procedural protections, there was little sense in rejecting inconsistent civil jury verdicts, but not inconsistent criminal jury verdicts. *Price,* 405 Md. at 27, 949 A.2d at 629. Accordingly, we joined a minority of states in rejecting all inconsistent verdicts. *Price,* 405 Md. at 29, 949 A.2d at 630.

■■■ This case concerns the relationship between a reversed conviction predicated on an inconsistent verdict and a conviction for an uncharged lesser included offense based on that reversed conviction. Our decisions make clear that a conviction for a greater offense constitutes a finding of guilt for all lesser included offenses. *Brooks,* 314 Md. at 601, 552

---

**8.** This rejection of inconsistent verdicts is consistent with our tolerance of apparently inconsistent verdicts in a bench trial when the judge explains the inconsistency on the record. In such a case, the judge must explain the inconsistency so that it "in substance disappears upon review of the trial court's explanation." *State v. Williams,* 397 Md. 172, 189–90, 916 A.2d 294, 305 (2007). Such an explanation shows why apparently inconsistent verdicts are, in fact, consistent.

A.2d at 880; *see also Grimes v. State*, 44 Md.App. 580, 583, 409 A.2d 767, 769 (1980), *rev'd on other grounds*, 290 Md. 236, 429 A.2d 228 (1981) (Wilner, J.) ("[A] conviction of the greater presupposes a finding of guilt on the lesser included offense as well."). For example, in the present case, a conviction for the greater offense of robbery with a dangerous weapon constituted a finding of guilt for misdemeanor theft because misdemeanor theft is a lesser included offense of robbery with a dangerous weapon.[9] *See Thomas v. State*, 277 Md. 257, 264–67, 353 A.2d 240, 245–47 (1976) (articulating the test for identifying lesser included offenses) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)). If a conviction for a greater offense is reversed, a defendant may sometimes be convicted of a lesser included offense without a new trial. *See Brooks*, 314 Md. at 601, 552 A.2d at 880 (remanding the case to the trial court, following a reversal, with instructions for the trial court to convict the defendant of a lesser included offense without a new trial).

We have never held, however, that a defendant may be convicted of a lesser included offense based on a conviction that has been reversed due to inconsistency. *Brooks* presents a set of circumstances where an appellate court may properly reverse a conviction and remand the case to the trial court with instructions to enter a judgment of guilty for a lesser included offense. 314 Md. at 601, 552 A.2d at 880. In *Brooks*, like this case, the greater offense was robbery with a dangerous weapon. 314 Md. at 586–87, 552 A.2d at 873. We

---

**9.** Neither party disputes the contention that misdemeanor theft is a lesser included offense of robbery with a dangerous weapon. *See Wiggins v. State*, 324 Md. 551, 583, 597 A.2d 1359, 1374 (1991); *see also Rudder v. State*, 181 Md.App. 426, 467, 956 A.2d 791, 815 (2008) ("Theft is a lesser included offense within the greater inclusive offense of robbery, for robbery is, by definition, a theft from the person accomplished by force or threat of force."). *But see Spitzinger v. State*, 340 Md. 114, 121–22, 665 A.2d 685, 687 (1995) (explaining that felony theft is not a lesser included offense of robbery because the value of the property at issue in the robbery could be lower than is required for felony theft).

reversed the conviction for that offense because the trial court had misinterpreted a particular element of robbery with a dangerous weapon—whether a toy gun could constitute a "dangerous weapon." *Brooks,* 314 Md. at 600–01, 552 A.2d at 880. We concluded that the evidence was insufficient to prove beyond a reasonable doubt robbery with a dangerous weapon. *Brooks,* 314 Md. at 600–01, 552 A.2d at 880. In so concluding, this Court did not disturb the trial court's findings regarding the assault and theft elements of robbery with a dangerous weapon. We could therefore be confident that the trial court had found sufficient evidence to satisfy these remaining elements. Those elements—assault and theft—constituted simple robbery, so we instructed the trial court to enter a judgment of guilty against the defendant for that offense. *Brooks,* 314 Md. at 601, 552 A.2d at 880.

The reversal in this case, however, was different. The Court of Special Appeals reversed the conviction for the greater offense because it was inconsistent with an acquittal for a lesser included offense. The question here is whether the intermediate appellate court could use that reversed conviction as the basis for directing the trial court to enter a judgment of guilty for another lesser included offense. We conclude that it could not. In a case such as this, where the conviction for the greater offense was reversed due to inconsistency, an appellate court may not remand the case to the trial court with directions to enter a judgment of conviction against the defendant for a lesser included offense.

We reach this conclusion for three reasons. First, and most importantly, a conviction that has been reversed for inconsistency is not sufficiently reliable to be the basis for a conviction of a lesser included offense. A conviction is reversed for inconsistency "because we can have no confidence in a judgment convicting [the defendant] of one crime when the judge, by his acquittal of another, appears to have rejected the only evidence that would support the conviction here." *Johnson,* 238 Md. at 543, 209 A.2d at 772 (quoting *United States v. Maybury,* 274 F.2d 899, 905 (2nd Cir.1960)). When a conviction is reversed for inconsistency, there can be no confidence

about the judge's rationale for reaching the inconsistent verdict, nor can there be confidence about which aspects of his conviction have been left undisturbed. Unlike the reversal in *Brooks*, which affected only one aspect of the reversed conviction that did not affect the lesser included offense, the reversal in this case makes the entire conviction unreliable.

Second, our conclusion in this case is supported by our decision in *Price* and the other cases through which we have entirely rejected inconsistent verdicts. In *Price*, we declared that "inconsistent verdicts shall no longer be allowed." 405 Md. at 29, 949 A.2d at 630. As explained above, we had already rejected inconsistent verdicts in a wide variety of other situations, and we had long held them "contrary to law." *Price*, 405 Md. at 19–29, 949 A.2d at 624–30. If we allowed an appellate court to rely on an inconsistent judgment as the basis for directing a trial court to convict a defendant, we would be retreating from this long line of cases. Instead, we reaffirm our disapproval of inconsistent verdicts by refusing to allow an appellate court to use one of them as the basis for a subsequent conviction.

Finally, our decision is consistent with the criminal justice system's presumption in favor of the defendant. A defendant "is 'presumed to be innocent until proven guilty beyond a reasonable doubt, and that presumption attends him throughout the trial until overcome by proof establishing his guilt beyond a reasonable doubt and to a moral certainty.'" *State v. Adams*, 406 Md. 240, 320, 958 A.2d 295, 344 (2008) (quoting *Bruce v. State*, 218 Md. 87, 98, 145 A.2d 428, 434 (1958)). A conviction that has been overturned due to inconsistency is too unreliable to serve as proof beyond a reasonable doubt that an individual is guilty of a different crime, even a lesser included offense.

The Court of Special Appeals in this case reversed the conviction for robbery with a dangerous weapon because it was inconsistent, but subsequently relied on that conviction when it directed the trial court to convict the defendant of a lesser included offense. This was in err. Once a conviction

for a greater offense has been reversed due to inconsistency, it cannot provide the basis for a conviction for a lesser included offense.[10]

### *Failure to Pursue Misdemeanor Theft at Trial*

The Court of Special Appeals also erred in its remand because the parties were given no opportunity to present arguments on the uncharged lesser included offense before the trial court. We reach this conclusion based on our review of *Hagans, Brooks,* and other cases from this and other jurisdictions, as well as our consideration of fairness concerns and the appropriate allocation of judicial decision-making.

Both parties and the Court of Special Appeals have discussed extensively our decision in *Hagans.* Pursuant to *Hagans,* a defendant may be convicted of a lesser included offense in a jury trial even though that offense was not charged, subject to some exceptions. 316 Md. at 448, 559 A.2d at 801. In *Hagans,* we cited a number of factors in reaching this conclusion, including: defendants would be protected by giving the jury an alternative to a guilty verdict on the greater offense; defendants would be prevented from going free when the prosecutor has not proven an element of the greater offense; and punishments would more accurately conform to crimes actually committed. 316 Md. at 448, 559 A.2d at 800 (citing Note, *The Lesser Included Offense Doctrine in Pennsylvania: Uncertainty in the Courts,* 84 Dick. L.Rev. 125, 126 (1979)). These factors are equally applicable to bench trials,

---

**10.** We note that Smith cannot be tried again or convicted of either robbery with a dangerous weapon or use of a handgun in the commission of a felony. Collateral estoppel prohibits retrial for these offenses because the acquittal for the lesser included offense of first-degree assault precludes a finding of guilty for either greater offense. *See Ferrell v. State,* 318 Md. 235, 241, 567 A.2d 937, 940 (1990) (explaining that, under the Fifth Amendment of the United States Constitution and the Maryland common law, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit" (quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970))).

where prosecutors and the public both have an interest in ensuring that defendants are convicted for offenses the defendants did commit, but not for offenses of which they are innocent. Consistent with *Hagans,* we conclude that a judge, not just a jury, may convict a defendant of an uncharged lesser included offense.

Our other holding in *Hagans* has limited applicability to this case. In *Hagans,* we specifically considered the circumstances under which an uncharged lesser included offense may be submitted to a jury, not a judge. 316 Md. at 455, 559 A.2d at 804. We held that a judge, sitting in a jury trial, may only submit a lesser included offense to the jury if either the defendant or the State requests or affirmatively agrees to the submission. *Hagans,* 316 Md. at 455, 559 A.2d at 804. We concluded that the ultimate decision whether to submit such an offense to the jury "is a matter of prosecution and defense strategy which is best left to the parties," but we did not prohibit the judge from initially raising the issue of a lesser included offense. *Hagans,* 316 Md. at 455, 559 A.2d at 804. Of particular relevance to the present case, we did not address the circumstances upon which the finder of fact in a bench trial might consider an uncharged lesser included offense.

■ This requirement from *Hagans,* that an uncharged lesser included offense may only be submitted to the jury with a request or agreement from the parties, does not apply to bench trials. It was based on our conclusion that the decision whether a jury should consider an uncharged lesser included offense is one of trial strategy that is better left to the parties. *Hagans,* 316 Md. at 455, 559 A.2d at 804. This is a strategic decision because it presents an important choice for both parties: whether to submit an uncharged lesser included offense to the jury or hope that the jury will choose the desired result when it has an "all or nothing" choice. *Hagans,* 316 Md. at 454–55, 559 A.2d at 804 (quoting *People v. Sowinski,* 148 Ill.App.3d 231, 101 Ill.Dec. 326, 498 N.E.2d 650, 659 (1986)). On the contrary, there is no such strategic decision to be made in a bench trial. The parties cannot hope for a

compromise verdict because a judge cannot compromise with him or herself and because a judge can only properly convict a defendant if there is sufficient evidence to do so. *Ball v. State,* 347 Md. 156, 206, 699 A.2d 1170, 1194 (1997) ("[T]rial judges are presumed to know the law and to apply it properly."). We see no reason, however, why the parties in a bench trial should be allowed to decide whether the court will consider an uncharged lesser included offense when there are no countervailing concerns regarding trial strategy.

 In regard to an appellate court's role in convicting a defendant of a lesser included offense, our holding in *Brooks* supports the conclusion that an appellate court may sometimes instruct the trial court to find a defendant guilty of a lesser included offense when the greater offense has been reversed. In *Brooks,* we reversed the conviction on the greater offense and remanded the case to the trial court with instructions to convict the defendant of a lesser included offense that had been both charged and submitted to the jury. 314 Md. at 601, 552 A.2d at 880. We concluded that a conviction of the greater offense meant that the defendant necessarily had been convicted of the lesser included offense as well. *Brooks,* 314 Md. at 601, 552 A.2d at 880. As discussed in the previous section of this opinion, an appellate court may, under the appropriate circumstances, remand a case with directions to enter a verdict of guilty as to a lesser included offense.

 This case does not, however, present the appropriate circumstances for such a remand. The State has, in effect, proposed the following rule: a judge, sitting as the trier of fact in a bench trial, may convict a defendant of a lesser included offense of one of the charged offenses even though the lesser included offense was neither expressly charged nor mentioned at trial. Under this rule, a trial judge could convict a defendant of a lesser included offense even though neither party nor the judge had uttered a single word about that offense before the verdict was announced. The defendant's first opportunity to present an argument regarding the lesser included offense would be in an appellate proceeding. As a

matter of fairness and judicial economy, we reject this rule. Instead, we hold that a trial court may not convict a defendant of an uncharged lesser included offense unless the parties are given an opportunity to present arguments on that offense in the trial court.

This rule properly allocates responsibility to the trial court. It ensures that the trial court will have an opportunity to hear arguments on the lesser included offense, if the parties choose to make such arguments, which is consistent with the principle that a trial judge must be allowed to consider the arguments in a case. *See Nelson v. Carroll*, 350 Md. 247, 252, 711 A.2d 228, 230 (1998) ("A trial judge must be given a reasonable opportunity to consider all legal and evidentiary arguments in deciding what issues to submit to the jury and in framing proper instructions to the jury." (quoting *Kent Village v. Smith*, 104 Md.App. 507, 517, 657 A.2d 330, 334 (1995))). This rule also allocates the appropriate fact-finding responsibilities to the trial court, which we have frequently noted is best qualified to evaluate and weigh the evidence in a case. *See, e.g., Schade v. Board of Elections*, 401 Md. 1, 34–35, 930 A.2d 304, 324 (2007) (noting that the trial court "is in the best position, a position far more superior than that of an appellate court, to evaluate and weigh ... evidence"); *Bowie v. MIE*, 398 Md. 657, 684, 922 A.2d 509, 525 (2007) (noting "the trial court's unique position to weigh the credibility of the evidence and testimony adduced at trial"). Furthermore, this rule is consistent with our preference for limiting unnecessary appeals. *See* Md. Rule 8–131 (allowing an appellate court to consider issues not raised in the trial court to "avoid the expense and delay of another appeal"); *Long v. State*, 343 Md. 662, 676, 684 A.2d 445, 452 (1996) (noting that one purpose of Maryland Rule 4–252 is to avoid unnecessary appeals); *see also Taha*, 378 Md. at 500, 836 A.2d at 649 (Raker, J., dissenting) (noting that "[o]ne reason underlying the contemporaneous objection rule is to avoid unnecessary appeals" and promotion of judicial economy).

This rule also eliminates concerns that might arise, for both the defendant and the State, if the parties are not given an

opportunity to present closing arguments regarding the lesser included offense. *See Cruz v. State*, 407 Md. 202, 220–21, 963 A.2d 1184, 1195 (2009) (finding prejudice where the jury was presented with a new theory of culpability after closing arguments); *Lee v. State*, 405 Md. 148, 161–62, 950 A.2d 125, 132–33 (2008) (noting the "importance of closing arguments"); *Spence v. State*, 296 Md. 416, 419, 463 A.2d 808, 809 (1983) (explaining that "the opportunity for summation by defense counsel prior to verdict in a non-jury trial as well as in a jury trial is a basic constitutional right guaranteed by Article 21 of the Maryland Declaration of Rights and the Sixth Amendment to the United States Constitution"). By giving the parties a chance to present arguments that directly address the uncharged lesser included offense, this rule will provide the trial court with arguments from both parties on the lesser included offense, including whether it is even a lesser included offense at all, which will assist the court and is in keeping with our adversarial system. *See Lee*, 405 Md. at 162, 950 A.2d at 133 (explaining that " '[s]ummation provides counsel with an opportunity to creatively mesh the diverse facets of trial, meld the evidence presented with plausible theories, and expose the deficiencies in his or her opponent's argument' " (quoting *Henry v. State*, 324 Md. 204, 230, 596 A.2d 1024, 1037 (1991))).[11]

This rule is consistent with our decisions in both *Hagans* and *Brooks*, which provide the parties with an opportunity to address, in closing arguments, all the offenses that the factfinder is considering. In *Hagans*, we allowed the trial judge to instruct the jury on an uncharged lesser included offense. 316 Md. at 455, 559 A.2d at 804. Closing arguments occur

---

**11.** This rule will not necessarily give either party an opportunity to present new evidence regarding the uncharged lesser included offense or to change their overall trial strategies. Either party, or the judge, may raise the uncharged lesser included offense at any time before the fact-finder renders the verdict. *Cf. Hagans*, 316 Md. at 433–37, 559 A.2d at 794–95 (allowing the judge or the parties to raise the offense after the close of evidence). This rule does, however, give the parties an opportunity to present arguments to the trial court regarding the lesser included offense before the judge renders a verdict.

after the jury is given its instructions, so, under *Hagans,* the parties must know by closing arguments what offenses the fact-finder is considering. *See* Md. Rule 4–325(a). Similarly, the jury in *Brooks* was given instructions on the lesser included offense, and, again, the parties gave their closing arguments after those instructions were given. 314 Md. at 587, 552 A.2d at 873. In the present case, we are giving the parties in bench trials the same opportunity to present arguments to the fact-finder on uncharged lesser included offenses as we have afforded to the parties in jury trials.

The rule we announce in this case is similar to the rule in other jurisdictions. The Supreme Court of New Hampshire, for example, has held that a trial court may consider a lesser included offense *sua sponte* in a non-jury trial, but has explained that the trial court should "indicate to the parties at the close of the evidence its intention to raise a lesser-included offense and . . . give both sides an opportunity to express their views on the subject." *In re Nathan L.,* 146 N.H. 614, 776 A.2d 1277, 1281 (2001). Similarly, the District of Columbia Court of Appeals recently held that a trial judge could consider a lesser included offense *sua sponte,* but specifically noted that the court had consulted counsel and received the government's acquiescence before convicting the defendant of that offense. *Mungo v. United States,* 772 A.2d 240, 244 (D.C. 2001); *see also Hawthorne v. United States,* 829 A.2d 948, 951–52 (D.C.2003) (quoting language from *Mungo* regarding the consultation of counsel in regard to a lesser included offense). The intermediate appellate court in Colorado has also concluded that a trial court may not consider a lesser included offense when the State has not taken a position on the lesser included offense. *In re J.A.M.,* 43 P.3d 673, 675 (Colo.App.2001). These decisions support our conclusion in this case that a trial judge cannot unilaterally convict a defendant of an uncharged lesser included offense.[12]

---

12. Several other courts have come to a contrary conclusion, holding that a trial judge has complete discretion whether to consider an uncharged lesser included offense. *See State v. Atkinson,* 46 Conn.

Finally, we see no detriment to giving the parties an opportunity to present an argument at trial regarding an uncharged lesser included offense. Indeed, we see only advantages. *Cf. Collier v. State,* 999 S.W.2d 779, 782 (Tex.Crim. App.1999) (explaining that requiring the State or defendant to request a jury instruction on a lesser included offense "places no onerous burden on the State"). As we have explained in this opinion, this rule will allow both parties to direct their arguments to the charges that the trial court is actually considering, while allowing the trial judge to convict the defendant of the crime, if any, that the defendant actually committed. It will also prevent unnecessary appeals by giving the parties an opportunity to present arguments on the uncharged lesser included offense in the trial court, where such arguments are most appropriate.

 In conclusion, we hold that a trial judge may not convict a defendant of an uncharged lesser included offense unless the parties are given an opportunity to present arguments on that offense before the trial court. Once the court has given the parties that opportunity, the trial court may convict the defendant of the uncharged lesser included offense regardless of whether either party requests or agrees that the court should consider that offense.

---

Supp. 130, 741 A.2d 991, 994–95 (1999) (holding that "the court is obliged to consider all applicable lesser included offenses in a trial without a jury"); *Sorrell v. State,* 855 So.2d 1253, 1257 (Fla.App. 4 Dist.2003) (finding "no authority for the proposition that in a non-jury trial a judge may find a defendant guilty of a lesser included offense only when the parties argue to the court that guilt on a lesser charge is a potential outcome"); *State v. Archuleta,* 108 N.M. 397, 772 P.2d 1320, 1321 (Ct.App.1989) (holding that "a trial court, sitting without a jury, may consider a lesser charge when neither party has requested a finding on that charge or argued it to the court"); *Shute v. State,* 877 S.W.2d 314, 315 (Tex.Crim.App.1994) (holding that "[i]n a bench trial, the prosecution is not required to submit a lesser included offense charge to the trial judge" and that "[t]he trial court is authorized to find the appellant guilty of any lesser offense for which the State provides the required proof"). With all due respect to our sister jurisdictions, none of these cases present an argument that dissuades us from our conclusion that we are adopting a better rule.

██ Having so concluded, we also conclude that an appellate court may not direct a trial court to enter a judgment of conviction for an uncharged lesser included offense under the same circumstances. If an appellate court could direct a trial court to enter such a judgment, then it would be directing the trial court to do exactly what we have forbidden—convict a defendant without giving the parties an opportunity to present arguments on the uncharged lesser included offense before the trial court. This would undermine the rule in this opinion as it would require the parties to present arguments on the uncharged offense for the first time on appeal. Accordingly, we also hold that an appellate court may not direct the trial court to enter a judgment of conviction for an uncharged lesser included offense when the parties had no opportunity to present arguments on that offense before the trial court.

## III.

██ We have also been asked to determine whether a conviction for misdemeanor theft in this case would be inconsistent with the acquittal for first-degree assault. We need not consider that issue because the offense of first-degree assault is no longer before this Court, by virtue of our affirmative answer to the first question presented in this appeal. Neither this Court, nor the Court of Special Appeals, could have properly directed the trial court to enter a judgment of conviction for misdemeanor theft. We therefore need not consider whether such a conviction would have been inconsistent with Smith's acquittal for first-degree assault. By opining on that matter, we would be "rendering [a] purely advisory opinion[ ], a long forbidden practice in this State." *Smigiel v. Franchot*, 410 Md. 302, 320, 978 A.2d 687, 698 (2009) (quoting *Hatt v. Anderson*, 297 Md. 42, 46, 464 A.2d 1076, 1078 (1983)).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF CONVICTION FOR ROBBERY WITH A DANGEROUS WEAPON AND FOR THE USE OF A HANDGUN IN THE*

*COMMISSION OF A FELONY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY, DIRECTING THE CIRCUIT COURT TO ENTER JUDGMENT OF ACQUITTAL FOR ROBBERY WITH A DANGEROUS WEAPON AND FOR USE OF A HANDGUN IN THE COMMISSION OF A FELONY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.*

MURPHY, J., files concurring and dissenting opinion which HARRELL, J. joins.

Concurring and Dissenting Opinion by MURPHY, Judge, which HARRELL, J. joins.

I agree with the majority's conclusions that (1) "a trial judge may not convict a defendant of an uncharged lesser included offense unless the parties are given an opportunity to present arguments on that offense before the trial court," and (2) "[o]nce the court has given the parties that opportunity, the trial court may convict the defendant of the uncharged lesser included offense regardless of whether either party requests or agrees that the court should consider that offense." I dissent, however, from that portion of the majority opinion in which those conclusions are applied to the facts of this case.

## I.

I am persuaded that Petitioner is not entitled to reversal of the convictions for robbery with a dangerous weapon and use of a handgun in the commission of a felony. In my opinion, those convictions should be reinstated under the "slip of the tongue" rule applied in *Reed v. State,* 225 Md. 566, 171 A.2d 464 (1961), when this Court stated that "[a]lmost anyone can make a slip of the tongue, and judges are not immune from such errors." *Id.* at 570, 171 A.2d at 466. I would hold that the "slip of the tongue" rule is equally applicable to the issue of whether, as soon as the Circuit Court announced that it was granting Petitioner's motion for judgment of acquittal with

respect to "count seven" (first degree assault), Petitioner could no longer be convicted of either robbery with a deadly weapon or use of a handgun.

In *Reed*, the defendant/appellant, who was charged with various offenses in a fourteen count indictment, elected to be tried before a judge of the Criminal Court of Baltimore. At the conclusion of the State's case-in-chief, while moving for a "directed verdict" as to all counts, defense counsel argued that the defendant was entitled to a directed verdict as to the counts that charged him with "sale" of heroin and marihuana, "on the ground that the evidence showed that the sale alleged was made to a person other than the individual named in the indictment as the purchaser." *Id.* at 569, 171 A.2d at 465. The trial judge overruled the motion as to the counts that charged the defendant with "possession" of drugs, but "granted [the motion] as to the sale." *Id.* At this point, "[t]he defendant's trial counsel ... rested the case as to possession and control and proceeded to argue those questions to the court." *Id.* The record shows that, at the conclusion of that argument, the trial judge—after stating that he "was completely satisfied that this crime has been involved with narcotic drugs"—announced, "I will have to find him guilty on the count other than possession."

On appeal to this Court, the defendant argued that he was entitled to a reversal of the convictions entered on the "possession" counts of heroin and marihuana on the ground that he had been acquitted of those counts by operation of law when the trial judge erroneously found him guilty of the "sale" counts that were no longer before the court. While rejecting that argument, this Court stated:

> After a careful study of the entire colloquy relating to the sufficiency of the evidence both before and after the closing argument of defense counsel, we have no doubt (assuming no error by the court reporter) that a slip of the tongue is exactly what occurred in the judge's statement of the counts upon which he was finding the defendant guilty.... Any different interpretation of the judge's statement would lead to the conclusion that he was finding the defendant guilty of

selling and dispensing [narcotic drugs], when the transcript makes it perfectly clear that he had already found the defendant not guilty of those charges because of the discrepancy in proof as to the identity of the purchaser.

*Id.* at 570–71, 171 A.2d at 466. From my review of the record in the case at bar, which includes the Circuit Court's statement that "the assault merges into the robbery," I have no doubt that a slip of the tongue is exactly what occurred when the Circuit Court granted the motion for judgment of acquittal with respect to "count seven." I would therefore reverse the judgment of the Court of Special Appeals and direct that Court to affirm Petitioner's convictions for robbery with a dangerous weapon and use of a handgun in the commission of a felony.

## II.

In the alternative, assuming that the judgment of acquittal entered on count seven required reversal of the convictions for robbery *with a dangerous weapon* and *use of a handgun in the commission of a felony,* a judgment of acquittal as to the *first degree* assault charged in count seven did not operate to prohibit the Circuit Court from convicting Petitioner of the lesser-included offense of (simple) robbery as well as the lesser-included offense of misdemeanor theft. While some degree of assault is a lesser included offense of the crime of robbery, a *first degree assault* is not an essential element of robbery. For that reason, if it is necessary that the case at bar be remanded to the Circuit Court for further proceedings, I would expressly hold that Respondent is entitled to a new trial on the charges of both robbery and misdemeanor theft, rather than to merely present additional argument on the misdemeanor theft charge.

Judge HARRELL has authorized me to state that he joins this concurring and dissenting opinion.