*Daquan Middleton v. State of Maryland*, No. 911, September Term, 2017, filed August 28, 2018. Opinion by Battaglia, J.

**CRIMINAL PROCEDURE — SUFFICIENCY OF INDICTMENT — OFFENSE NOT EXPRESSLY OR IMPLIEDLY CHARGED:** A defendant may not be convicted of an offense that is not charged, expressly or impliedly, in an indictment, and he may challenge such a conviction through a motion to correct an illegal sentence. The remedy for such an illegal conviction is vacatur of both the conviction and the underlying sentence.

**CRIMINAL PROCEDURE — CONVICTION OF UNCHARGED LESSER-INCLUDED OFFENSE — WHEN PERMISSIBLE:** A defendant may only be convicted of an uncharged lesser-included offense if it meets the required evidence test as to a charged offense, and the offenses are based on the same act or acts. In a bench trial, such a conviction may not be entered unless the court provides the parties an opportunity to present arguments on the uncharged lesser-included offense in the trial court.

**CRIMINAL LAW — REQUIRED EVIDENCE TEST:** Under the required evidence test, two offenses are deemed to be the same if only one of the offenses contains an additional element.

**CRIMINAL LAW — REQUIRED EVIDENCE TEST — HOMICIDE:** In applying the required evidence test to a homicide offense, the question must be resolved within the context of a single kind of felonious *mens rea*.

**CRIMINAL LAW — REQUIRED EVIDENCE TEST — RELATIONSHIP BETWEEN SPECIFIC-INTENT SECOND-DEGREE MURDER AND SPECIFIC-INTENT FIRST-DEGREE ASSAULT:** Assault in the first degree, with the specific intent "to cause serious physical injury to another," under Criminal Law Article, § 3 202(a)(1), is a lesser-included offense of murder in the second degree, with the specific intent to inflict grievous bodily harm, if the assault and the murder are based upon the same act or acts.

**CRIMINAL PROCEDURE — CONVICTION OF UNCHARGED LESSER-INCLUDED OFFENSE — WHEN UNCHARGED OFFENSE IS BASED UPON A SEPARATE ACT THAN THE CHARGED GREATER OFFENSE:** When, as in the instant case, the trial court expressly finds that the uncharged purported lesser-included offense is based upon an act separate from the charged greater offense, it may not enter a conviction on the uncharged offense.

Circuit Court for Baltimore City
Case No. 116019013

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 911

September Term, 2017

_____

DAQUAN MIDDLETON

v.

STATE OF MARYLAND

_____

Kehoe,
Shaw Geter,
Battaglia, Lynne A.
(Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Battaglia, J.

_____

Filed: August 28, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

Following a bench trial in the Circuit Court for Baltimore City, Daquan Middleton, appellant, was found guilty of robbery, conspiracy to commit robbery, and first-degree assault. The court imposed a sentence of thirteen years' imprisonment for first-degree assault; a four-year suspended sentence for robbery, consecutive to that for the assault; and a four-year suspended sentence for conspiracy to commit robbery, concurrent with that for the assault.

First-degree assault was not expressly charged in the indictment. Middleton asserts that it is also not a lesser-included offense of any charge that was expressly charged, and he therefore claims, citing *Johnson v. State*, 427 Md. 356 (2012),[1] that his conviction of and sentence for first-degree assault must be vacated. Under the circumstances of this case, we conclude that Middleton was, as he contends, convicted of an uncharged offense. Accordingly, we vacate the judgment of conviction for first-degree assault, and, applying *Twigg v. State*, 447 Md. 1 (2016), we shall vacate the remaining sentences and remand for resentencing.

## BACKGROUND

Robert Ponsi was a server at The James Joyce Irish Pub and Restaurant at the Inner Harbor in Baltimore City. On a Saturday evening in January of 2016, Ponsi was riding home from work on his bicycle. At approximately 9:00 p.m., as he rode through

---

[1] *Johnson v. State*, 427 Md. 356 (2012), held that a defendant who had been convicted of an offense that had not been charged, expressly or impliedly, in an indictment could challenge that conviction through a motion to correct an illegal sentence. *Id.* at 365-71. It further held that the remedy for such an "illegal conviction[]" was vacatur of both the conviction and its attendant sentence. *Id.* at 378 (quoting *Alston v. State*, 425 Md. 326, 342 (2012)).

the Waverly section of Baltimore, near the intersection of Old York Road and Venable Avenue, he was accosted by a group of "between five and eight" juveniles.[2] That group included, among others, Middleton, Antwan Eldridge, and fifteen-year-old P.G.

A passerby, Craig Pearly, observed the attack. He was subsequently interviewed by Baltimore City Police Detective Eric T. Ragland of the Homicide Unit, and a transcript of that interview was admitted into evidence in lieu of Pearly's testimony.[3] Much of the ensuing factual recitation is derived from that transcript.

Pearly, accompanied by "a best friend," had just gotten off a Mass Transit Administration ("MTA") bus when he encountered the attack in progress. As he started walking along Old York Road towards his residence, he saw the victim, later identified as Ponsi, surrounded by "eight" youths, whom he recognized as "guys that I see all the time."[4] Ponsi was "swinging the bike," defensively, while the youths demanded his wallet. As he retreated from the encroaching attackers, Ponsi fell and was immediately set upon by all the youths. It was later determined that one of the attackers, P.G., had produced a knife and stabbed Ponsi eleven times and inadvertently stabbed Middleton twice in the leg in the process.

---

[2] There were conflicting reports as to how many attackers there had been, and the court, in concluding that there had been "between five and eight young men," did not make a specific finding in that regard.

[3] Counsel for both co-defendants, Middleton and Eldridge, consented to that procedure.

[4] Pearly stated that, although he could not "pick them out of a photo array or anything like that," he nonetheless was sure that the attackers were "kids" who were "from the neighborhood."

As Ponsi lay on the ground, screaming, Pearly heard several of the youths calling out, "take his f--king wallet," "take his phone." The attackers took Ponsi's phone and bicycle and "ran up the street."[5] Middleton and Eldridge made off with Ponsi's bicycle, heading east in the direction of the Weinberg Y in Waverly.[6]

After the attackers fled, and it was safe to approach, Pearly rendered aid to Ponsi, who was bleeding profusely. Pearly called 911, and emergency responders converged on the scene. Ponsi was transported to The Johns Hopkins Hospital for trauma care, but he died later that evening of his stab wounds.

Middleton initially rode the stolen bicycle because he had difficulty walking, given his stab wounds. He soon abandoned that idea and left the bicycle behind. Upon reaching the Weinberg Y, Middleton could no longer continue. Eldridge, unwilling to abandon Middleton, decided to call 911, claiming that they had been "attacked" by a "light skinned guy" and that Middleton had been stabbed in that fictitious attack. Emergency responders transported Middleton to The Johns Hopkins Hospital for treatment of his stab wounds.

Sergeant Robert Cherry of the Northeastern District responded to Eldridge's 911 call. In the words of Detective Raymond Hunter, the lead investigator in the case, Sergeant Cherry "put two and two together" and realized that there might be a connection

---

[5] There was conflicting evidence as to whether anyone took Ponsi's wallet. Emergency responders later recovered $262 from his person.

[6] The Weinberg Y in Waverly is located at the site of the former Memorial Stadium on East 33rd Street.

3

between Eldridge's 911 call and Pearly's 911 call, just minutes earlier and within one-half mile of one another.

Police soon determined that both Middleton and Eldridge had been involved in the attack on Ponsi. They quizzed Eldridge about the victim's stolen bicycle, which he initially denied having. After police informed him, however, that a witness had seen him and Middleton with the bicycle, he "agreed to get into" Cherry's police cruiser and take the police to where Middleton had abandoned the bike.

Middleton and Eldridge both gave statements to police that were subsequently admitted into evidence at their joint trial. Eldridge acknowledged that the group had intended to rob Ponsi but not to hurt him. Middleton ultimately made a similar acknowledgement. Both defendants also admitted to having either "kicked" or "stomped" Ponsi as he lay on the ground.

An eight-count indictment was subsequently returned, in the Circuit Court for Baltimore City, charging Middleton with first-degree murder, conspiracy to commit first-degree murder, armed robbery, conspiracy to commit armed robbery, robbery, conspiracy to commit robbery, theft, and wearing and carrying a dangerous weapon openly and with the intent to injure. A similar indictment was returned against Eldridge. Middleton and Eldridge were tried together in a bench trial.

Middleton was acquitted of first- and second-degree specific-intent murder, first-degree felony-murder, conspiracy to commit first-degree murder, and wearing and carrying a dangerous weapon openly and with the intent to injure. As for first- and second-degree specific-intent murder, the court reasoned that there was no evidence of

4

either premeditation or deliberation, nor was there proof beyond a reasonable doubt that Middleton had formed a specific intent to kill or to inflict such serious bodily injury that death would be the likely result.

As for first-degree felony-murder, the court opined that there must have been "a common scheme, or an attempt to commit [an enumerated] felony, and that the murder was a natural consequence of the felony that was committed" but that proof of such a common scheme was lacking. The court found that Middleton's taking of Ponsi's bicycle had been a "post facto robbery," which did not indicate "a robbery in contemplation at the very beginning." The court also found that "the group [did not have] a common scheme to commit robbery" or even "a common design or scheme to commit a crime." Moreover, the court found that neither Middleton nor Eldridge "knew that [murder] was going to be the result, or that [P.G.] had this in mind" and, crucially, found that P.G, the juvenile who had stabbed both Ponsi and Middleton, had separately formed a homicidal intent that none of the other perpetrators had shared and that the stabbing had been "an intervening independent act," which absolved the others of responsibility for the murder.

The court found Middleton guilty of first-degree assault based upon the intent to "cause or attempt to cause serious physical injury to another," as well as robbery and conspiracy to commit robbery. The assaultive acts underlying Middleton's first-degree assault conviction included the intent to frighten as well as the "stomping," committed as part of a group assault upon the victim, but not the stabbing.

The court thereafter sentenced Middleton to thirteen years' imprisonment for first-degree assault, a concurrent term of four years' imprisonment for conspiracy to

5

commit robbery, and a consecutive term of four years' imprisonment for robbery, all suspended, to be followed by five years' probation. Middleton noted this timely appeal.

## DISCUSSION

### *The Parties' Contentions*

Middleton contends that he was convicted of an offense that was not expressly or impliedly charged in the indictment such that, under *Johnson v. State*, *supra*, 427 Md. 356, his conviction and its attendant sentence are illegal and must be vacated. He presents a legal argument and a factual argument in support of that contention, both of which are predicated upon the fact that the indictment did not expressly allege an assault in the first degree.

First, he asserts that assault in the first degree, under Criminal Law Article ("CL"), § 3-202(a)(1),[7] is not a lesser-included offense of murder (which was alleged in the indictment), under the required evidence test, because it is possible to commit murder without committing an assault. In support, he cites *Simpkins v. State*, 88 Md. App. 607 (1991), *cert. denied*, 328 Md. 91 (1992). In that case, a two-year-old girl had died from malnutrition and dehydration caused by her parents' gross neglect, and we held that the

---

[7] Maryland Code (2002, 2012 Repl. Vol.), Criminal Law Article ("CL"), § 3-202(a)(1), provides that a "person may not intentionally cause or attempt to cause serious physical injury to another." The other variety of first-degree assault, predicated upon the use of a firearm, CL § 3-202(a)(2), is not at issue in this appeal.

6

evidence was sufficient to sustain the parents' convictions of second-degree depraved-heart murder. *Id.* at 609, 620-21.[8]

Middleton also asserts that, even were we to reject his legal argument, it was nonetheless true that the court found that the first-degree assault and the murder of the victim were not based upon the same act. In other words, even assuming that the State is correct that first-degree assault is impliedly charged by the count of the indictment alleging murder, the court nonetheless found that the first-degree assault committed by Middleton was *not* that first-degree assault but was, instead, a *different*, stand-alone assault, based upon a separate act, which was neither expressly nor impliedly charged in the indictment. The court's factual finding thus necessarily implies that Middleton was convicted of an uncharged first-degree assault.

The State counters with a number of arguments, including that Middleton received adequate notice that he had been charged with an assault; that authority concerning the merger of offenses, relied upon by Middleton, should not necessarily be applied here, where the issue is whether the indictment impliedly contained an otherwise uncharged offense; that "Middleton's assaultive conduct aided and abett[ed] the stabbing of the

---

[8] In *Simpkins*, we did not consider whether the parents' acts amounted to assault. Instead, we relied upon the duty a parent owes a young child, in determining that neglect of that duty could establish malice. *Simpkins v. State*, 88 Md. App. 607, 619-20 (1991) (observing that "mere neglect, despite its awful consequence, is not enough to establish malice" but that "[w]here a young child, incapable of self-help, is knowingly, deliberately, and unnecessarily placed in confinement and left alone for up to five days without food, drink, or attention and death ensues from that lack, malice may be inferred"), *cert. denied*, 328 Md. 91 (1992).

victim"; and that, since Middleton had been charged with, among other offenses, first-degree felony murder based upon robbery as well as robbery, he necessarily had also been charged with assault. If, however, we were to agree with Middleton that his conviction of first-degree assault must be vacated, the State, relying upon *Twigg v. State*, *supra*, 447 Md. 1, requests that we vacate the remaining sentences and remand for resentencing.

### *Standard of Review*

Appellate review of a judgment entered following a bench trial is governed by Maryland Rule 8-131(c).[9] We review the trial court's factual findings for clear error, giving "due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* Factual findings "cannot be held to be clearly erroneous" if "there is any competent evidence to support" them. *Goff v. State*, 387 Md. 327, 338 (2005) (quoting *Solomon v. Solomon*, 383 Md. 176, 202 (2004)).

"The deference shown to the trial court's factual findings under the clearly erroneous standard does not, of course, apply to legal conclusions." *Id.* (quoting *Nesbit v. Government Employees Insurance Co.*, 382 Md. 65, 72 (2004)). We review a trial court's legal conclusions to determine whether they are "legally correct." *Id.*

---

[9] Maryland Rule 8-131(c) provides:

> **(c) Action Tried Without a Jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

*Analysis*

As noted earlier, the indictment charged Middleton with murder in the first degree, conspiracy to commit murder in the first degree, armed robbery, conspiracy to commit armed robbery, robbery, conspiracy to commit robbery, theft, and wearing and carrying a dangerous weapon openly and with the intent to injure. It did not expressly charge Middleton with assault in the first degree, the conviction of which Middleton challenges.

The Court of Appeals has held that, in a jury trial, "a defendant may only be convicted of an uncharged lesser included offense if it meets the elements [i.e., required evidence] test," *Hagans v. State*, 316 Md. 429, 450 (1989), and it extended that holding to bench trials in *Smith v. State*, 412 Md. 150 (2009), under the condition that the parties be "given an opportunity to present arguments on that offense in the trial court." *Id.* at 172. Here, there is no dispute that the parties were provided that opportunity.[10]

---

[10] During closing argument, Eldridge's trial counsel was the first to argue after the State had concluded its closing argument. The following exchange took place:

> [COUNSEL FOR ELDRIDGE]: I do not agree that second degree felony murder's before the Court. I don't think that's a lesser included of the charged count and I don't think the felony has been charged; namely, the State insinuated that first degree assault is an inherently dangerous felony that might provide the element of -- an element to support second degree felony murder. But because first degree assault hasn't been charged, that's sort of like a --
>
> THE COURT: Yeah. But first degree assault --
>
> [COUNSEL FOR ELDRIDGE]: -- tail chasing it's own dog.

(continued)

9

THE COURT: I understand. But first degree assault is a lesser included, is it not, of --

[COUNSEL FOR ELDRIDGE]: Pardon me.

THE COURT: First degree assault --

[COUNSEL FOR ELDRIDGE]: Is a lesser included of --

THE COURT: The armed robbery.

[COUNSEL FOR ELDRIDGE]: -- first degree -- the armed robbery.

THE COURT: And also I would assume of the first degree murder.

[COUNSEL FOR ELDRIDGE]: Of the murder. Right.

THE COURT: Yeah. Okay.

[COUNSEL FOR ELDRIDGE]: But I don't think you can have a lesser included uncharged offense be an element of another crime; namely, second degree felony murder. That's just a -- the defendant's right to fair notice and the right to an indictment I think would be --

THE COURT: Okay.

[COUNSEL FOR ELDRIDGE]: -- implicated there.

Although Middleton's trial counsel did not adopt this argument, it was not necessary that he do so. Clearly, all that was required was that the circuit court put the parties on notice that it intended to consider an uncharged lesser-included offense and provide an opportunity to present argument on that issue. *Smith v. State*, 412 Md. 150, 172 (2009) ("[W]e hold that a trial court may not convict a defendant of an uncharged lesser included offense unless the parties are given an opportunity to present arguments on that offense in the trial court.). Since Middleton's trial counsel argued after Eldridge's, Middleton's trial counsel was put on notice by the exchange between the

(continued)

Consequently, Middleton's conviction of the uncharged offense of assault in the first degree may stand only if it is a lesser-included offense of an offense that was charged in the indictment.

In determining whether one offense is a lesser-included offense of another, we apply the required evidence test. In the merger context, the Court of Appeals has said that "[m]erger occurs as a matter of course when two offenses are deemed to be the same under the required evidence test *and* 'when [the] offenses are based on the same act or acts[.]'" *Nicolas v. State*, 426 Md. 385, 408 (quoting *Holbrook v. State*, 364 Md. 354, 370 (2001)). *See also Williams v. State*, 323 Md. 312, 316 (1991) (observing that, under "settled Maryland common law, the usual rule for deciding whether one criminal offense merges into another or whether one is a lesser included offense of the other, as well as the usual rule for determining whether two offenses are deemed the same for double jeopardy purposes, **when both offenses are based on the same act or acts**, is the so-called 'required evidence test'") (citations omitted) (emphasis added).

In other words, the required evidence test presupposes that the compared offenses are based upon the same act or acts. We therefore interpret *Hagans* and *Smith* as holding that "a defendant may only be convicted of an uncharged lesser included offense if it meets the elements test," *Hagans*, 316 Md. at 450, *and* the "offenses are based on the same act or acts." *Nicolas*, 426 Md. at 408.

_____

(continued)
court and Eldridge's trial counsel that the court was considering whether to convict either or both co-defendants of an uncharged lesser-included offense.

### When Based Upon the Same Acts, Is First-Degree Assault a Lesser-Included Offense of Murder?

Middleton's first contention, that assault in the first degree, under CL § 3-202(a)(1), is not a lesser-included offense of murder, makes no sense unless one specifies which type of murder. Judge Charles E. Moylan, Jr., for many years a member of this Court and now a Senior Judge, explained the application of merger law to homicide as follows:

> All questions of movement up or down the ladder of blameworthiness and all questions of what are greater inclusive or lesser included offenses must be resolved within the limits of a single vertical column—within the context of a single kind of felonious *mens rea*. Voluntary manslaughter, for instance, and second-degree murder of the specific intent-to-kill variety, for instance, are not lesser varieties of, or lesser included offenses within, first-degree felony-murder. They are intentional killings and nothing but. There is no cross-over. Each murderous, or otherwise felonious, *mens rea* exists in its own analytic universe.[11]

---

[11] Judge Moylan's statement regarding "a single vertical column" refers to what he has termed "The Full Matrix of Kinds and Grades of Criminal Homicide," which appears at page 41 of his text, *Criminal Homicide Law*. That matrix is as follows:

| **Intentional Murder** | | **Unintentional Murders** | |
|---|---|---|---|
| Premeditated specific intent to kill | | Designated statutory felony-murders | |
| Specific intent to kill | Specific intent to harm | Common law felony-murder doctrine | Depraved heart |
| **Voluntary Manslaughter** | | **Involuntary Manslaughters** | |
| Rule of provocation<br><br>Imperfect defenses | Rule of provocation<br><br>Imperfect defenses | Common law misdemeanor-manslaughter doctrine | Gross criminal negligence |

(continued)

12

Charles E. Moylan, Jr., *Criminal Homicide Law*, § 2.16, at 41-42 (MICPEL 2002). For example, we have said:

> Although second-degree murder of the intent-to-kill variety is thereby a lesser, included offense subsumed within premeditated murder, it is not a lesser included offense within felony-murder. Thus, the acquittal for second-degree murder is in no way inconsistent with the jury's irresolution on felony-murder[.]

*Butler v. State*, 91 Md. App. 515, 523 (1992), *aff'd*, 335 Md. 238 (1994). Likewise, the Court of Appeals has held that the underlying felony is an element of felony-murder but that, if "the murder conviction is premised upon independent proof of wilfulness, premeditation and deliberation under [CL § 2-201(a)(1)], or if the evidence is sufficient for a jury to find those elements, the offenses would not merge." *Newton v. State*, 280 Md. 260, 269 (1977).

Middleton's appellate argument essentially mixes apples and oranges, asking us to apply merger principles to second-degree depraved heart murder and specific-intent first-degree assault at the same time. Confining our analysis to a single type of *mens rea*, the specific intent "to cause serious physical injury to another," CL § 3-202(a)(1),[12] we clearly see that this variety of first-degree assault is, under the required evidence test, a

_____

(continued)
Charles E. Moylan, Jr., *Criminal Homicide Law*, § 2.16, at 41 (MICPEL 2002).

[12] "Serious physical injury" is further defined in CL § 3-201(d) as "physical injury that . . . creates a substantial risk of death" or "causes permanent or protracted serious . . . disfigurement; loss of the function of any bodily member or organ; or impairment of the function of any bodily member or organ."

lesser-included offense of second-degree murder based upon the specific intent to inflict

grievous bodily harm. Indeed, the Court of Appeals has said as much:

> Applying the required evidence test to [CL § 3-202(a)(1)], we conclude that, for sentencing purposes, assault in the first degree merges with the crime of second degree murder. The two crimes have the same elements with the one additional element for murder, the death of the victim.

*Sifrit v. State*, 383 Md. 116, 138 (2004).[13]

The indictment in this case charged Middleton with, among other things, murder

in the first degree. That count used the language in the short-form indictment, as set forth

in CL § 2-208.[14] "Under this statutory formula, even though it spells out murder in the

---

[13] Strictly speaking, assault in the first degree, under what is now CL § 3-202(a)(1), and murder in the second degree, based upon the intent to inflict grievous bodily harm, do not have precisely the same specific intent. The specific intent required to prove the latter is "the intent to do serious bodily injury, that death would be the likely result," *Thornton v. State*, 397 Md. 704, 733 (2007), and is narrower than the specific intent required under CL § 3-202(a)(1). *Thornton*, 397 Md. at 739 (holding that it was error to equate intent to do grievous bodily harm with intent to do serious physical injury). But it is nonetheless true that the specific intent to prove second-degree murder of this variety necessarily establishes the specific intent to prove first-degree assault under CL § 3-202(a)(1), and thus, *Sifrit*'s conclusion as to merger of those offenses is still valid. *See also Dixon v. State*, 364 Md. 209, 240 (2001) (concluding that first-degree assault under what is now CL § 3-202(a)(1) is a lesser-included offense of attempted voluntary manslaughter because "the evidence required to show an attempt to kill would demonstrate causing, or attempting to cause, a serious physical injury").

[14] CL § 2-208 provides in relevant part:

> (a) An indictment for murder or manslaughter is sufficient if it substantially states:

> "(name of defendant) on (date) in (county) feloniously (willfully and with deliberately premeditated malice) killed

(continued)

14

first degree, the accused may be convicted of murder in the first degree, of murder in the second degree, or of manslaughter." *Hook v. State*, 315 Md. 25, 32 n.11 (1989) (citations omitted) (construing Art. 27, § 616, the statutory antecedent to CL § 2-208). *See also Ross v. State*, 308 Md. 337, 345 (1987) (noting that a "defendant charged in the statutory language employed in this case is clearly apprised that he is being charged with the crime of murder and that he may be convicted of murder in either degree, or manslaughter").

Because Middleton was charged under the language in the short-form indictment, he was charged, among other things, with murder in the second degree, based upon the specific intent to inflict grievous bodily harm. As we have previously explained, assault in the first degree, under CL § 3-202(a)(1), is, under the required evidence test, a lesser-included offense of murder in the second degree, based upon the specific intent to inflict grievous bodily harm. We conclude that the uncharged offense at issue here, assault in the first degree, based upon the specific intent to cause serious physical injury to another, satisfies the elements test, and we turn next to consider whether the uncharged offense and the greater offense were based upon the same act or acts.[15]

_____

(continued)

> (and murdered) (name of victim) against the peace, government, and dignity of the State.".

[15] We note in passing that the State's argument that assault in the first degree, under CL § 3-202(a)(1), is a lesser-included offense of another charged offense, robbery, is unavailing. It is true the assault in the *second* degree is a lesser-included offense of robbery, but assault in the first degree, under CL § 3-202(a)(1), requires an additional element, the specific intent "to cause serious physical injury to another," that is not required for robbery; and robbery requires an additional element, theft, that is not

(continued)

15

### *Whether the First-Degree Assault and the Murder Were Based Upon the Same Acts*

Middleton claims that the first-degree assault and the second-degree murder of the victim were based upon distinct acts so that, even if those offenses were deemed to merge in the abstract, they do not merge under the facts of this case. In support of that contention, he cites *Thompson v. State*, 119 Md. App. 606 (1998), *Morris v. State*, 192 Md. App. 1 (2010), and *Wallace v. State*, 219 Md. App. 234 (2014).

In *Thompson*, the defendant was charged, in a fifteen-count indictment, alleging a series of greater and lesser-included offenses against three different victims. On the facts, there were, conceivably, two separate sets of criminal acts, committed half-an-hour apart from one another (the "eleven o'clock" and "eleven thirty incidents"). The structure of the indictment, however, made it clear that all the crimes alleged related to one of those sets of criminal acts, the "eleven o'clock incident." In that context, we held that first-degree assault and theft merged into armed robbery, as to the same victim, because the indictment did not charge assault or theft as to the "eleven thirty incident."

_____

(continued)
required for first-degree assault. Therefore, the two offenses are not the same under the elements test.

Nor was the court correct in concluding that assault in the first degree, under CL § 3-202(a)(1), is a lesser-included offense of armed robbery, a charged offense. Although first-degree assault committed with a firearm, under CL § 3-202(a)(2), *is* a lesser-included offense of armed robbery, *see*, *e.g.*, *Morris v. State*, 192 Md. App. 1, 39-40 (2010); *Williams v. State*, 187 Md. App. 470, 476 (2009), first-degree assault, based upon the specific intent "to cause serious physical injury to another," under CL § 3-202(a)(1), is *not* a lesser-included offense of armed robbery. Armed robbery does not require the specific intent required for first-degree assault of the (a)(1) variety, whereas specific-intent first-degree assault does not require the theft element of robbery, whether simple or armed.

16

We held that, "in a multi-count indictment where a count qualifies in all regards as a lesser included offense within a greater inclusive offense which is also charged, that count will be presumptively deemed to be a lesser included offense unless the charging document clearly indicates that such is not the case and that other unrelated criminal conduct is intended to be the subject of the count." *Thompson*, 119 Md. App. at 621-22. We rejected the State's contention that the facts adduced at trial were sufficient to establish that two separate assaults had occurred, reasoning that the "pertinent question [was] not whether more than one assault [had been] conceivably proved," but "whether more than one assault [had been] actually charged and, if not, then which of several possible assaults [had been] the only assault charged." *Id.* at 609.

Here, as in *Thompson*, the "pertinent question" is "whether more than one" first-degree assault "was actually charged and, if not, then which of several possible assaults was the only assault charged." *Id.* Given the court's finding that the stabbing (hence the murder) was an act separate from the violent assault committed by Middleton and Eldridge, there is no ambiguity as to whether the uncharged first-degree assault and the charged offense, second-degree murder, were based upon the same act or acts. Because the only charged first-degree assault in this case was subsumed within the murder charge, it could not be that first-degree assault of which the court convicted Middleton.

The second case relied upon by Middleton is *Morris v. State*, *supra*, 192 Md. App. 1. That case involved an indictment that was ambiguous as to whether first-degree assault and armed robbery (and attempted armed robbery of a second victim) were based

17

upon the same or separate acts. We resolved that ambiguity in favor of the defendant and merged the assaults into the armed robbery convictions. *Morris*, 192 Md. App. at 39-45.

*Wallace* addressed essentially the same issue as *Morris* but in the context of inconsistent verdicts for second-degree assault and robbery. We emphasized that the question whether multiple offenses arise out of the same transaction focuses upon the indictment (and, in a jury trial, the instructions), not the evidence adduced at trial. *Wallace*, 219 Md. App. at 253-55. Because of the ambiguities in the indictment and the jury instructions in that case, we resolved those ambiguities in favor of the defendant and held that the second-degree assault and robbery had arisen "from the same criminal transaction" and that, consequently, an acquittal of second-degree assault was legally inconsistent with the conviction of robbery. *Id.* at 258.

Applying the teachings of these cases, we are constrained to hold that Middleton's conviction of first-degree assault was based, as the court found, upon a separate act than the murder. The only first-degree assault impliedly charged was a lesser-included offense of murder. Therefore, Middleton was convicted of an offense that was not charged, either expressly or impliedly, in the indictment, and, under *Johnson v. State*, *supra*, 427 Md. at 378, the judgment of conviction and its attendant sentence are illegal and must be vacated.

### *Disposition*

We are left to determine the disposition of this case. For the reasons that follow, we shall grant the State's request to vacate the remaining sentences and remand for resentencing.

18

In *Twigg v. State*, *supra*, 447 Md. 1, the defendant had been found guilty of second-degree rape, incest, third-degree sexual offense, and child sexual abuse. The circuit court imposed consecutive sentences of twenty years' imprisonment for second-degree rape, ten years' imprisonment for incest, and ten years' imprisonment for third-degree sexual offense, as well as a suspended sentence of fifteen years for child abuse. *Id.* at 5. The Court of Appeals determined that second-degree rape, incest, and third-degree sexual offense all were lesser-included offenses of child abuse and that Twigg was entitled to merger of the lesser-included offense carrying the greatest maximum penalty, second-degree rape. *Id.* at 17-19.

The Court further held that it was appropriate to vacate the suspended sentence for child abuse (which was itself a lawful sentence and had not been challenged by the defendant) and remand for resentencing. *Id.* at 19-30. The Court reasoned that sentencing should be regarded as a "package" and "that, 'after an appellate court unwraps the package and removes one or more charges from its confines, the sentencing judge, herself, is in the best position to assess the effect of the withdrawal and to redefine the package's size and shape (if, indeed, redefinition seems appropriate).'" *Id.* at 28 (quoting *United States v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir. 1989)) (cleaned up).

Here, too, we regard the aggregate sentence imposed by the court as a "package." Our resolution of the question presented necessitates vacatur of what the court clearly regarded as the flagship charge. Under these circumstances, we deem it appropriate to give the court an opportunity "to redefine the package's size and shape" as it thinks appropriate, *id.*, subject, of course, to Courts and Judicial Proceedings Article, §

19

12-702(b).[16]     Accordingly, we vacate the remaining sentences and remand for resentencing as to those charges.

> **CONVICTION OF ASSAULT IN THE FIRST DEGREE VACATED. SENTENCES FOR ROBBERY AND CONSPIRACY TO COMMIT ROBBERY VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR RESENTENCING FOR ROBBERY AND CONSPIRACY TO COMMIT ROBBERY. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

---

[16] Maryland Code (1974, 2013 Repl. Vol.), Courts and Judicial Proceedings Article, § 12-702(b), provides:

> (b)  If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense.  However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:
>
> > (1) The reasons for the increased sentence affirmatively appear;
> >
> > (2) The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and
> >
> > (3) The factual data upon which the increased sentence is based appears as part of the record.

20